> After discovery by an insurance company that a building covered by a policy of insurance which denominates a lager-beer saloon as extra-hazardous, and provides that an extra-hazardous building avoids the policy, is used for that purpose, the company, by oral permission to make improvements on the building, waives the forfeiture, and recognizes the policy as operative, even though the policy requires written consent.

Appeal from circuit court, Kings county; EDGAR M. CULLEN, Justice.

Action by Amy Haas against the Montauk Fire Insurance Company, of Brooklyn, to recover for loss by fire of property covered by a policy of insurance issued by defendant.   Judgment for plaintiff.   Defendant appeals.

Argued before BARNARD, P. J., and PRATT, J.

*H. C. M. Ingraham*, for appellant.   *C. Ferguson, Jr.*, (*James C. Church*, of counsel,) for respondent.

BARNARD, P. J.   The plaintiff was the owner of certain premises in Brooklyn, situate on the north-easterly corner of Eighty-Sixth street and Fort Hamilton avenue in Brooklyn.   The premises had been used as a dwelling as to a portion thereof, and for a saloon as to the remainder, for many years.   In 1882 the defendant issued a policy for one year upon the building, which was described in the policy as "a frame dwelling-house."   Among the conditions of the policy was one denominating lager-beer saloons as extra-hazardous, and another providing that an extra-hazardous building made void the policy.   This policy was continued from year to year as originally issued, and the saloon business was carried on in it as usual.   The property was burned in March, 1887.   In the fall of 1886 the plaintiff's husband went to the defendant's office and saw the book-keeper, and applied to him for permission to make improvements on the premises.   This officer went to the secretary in the back part of the room.   They conversed together, and one of them asked Mr. Haas what improvements he was making.   He was told that the saloon floor was to be renewed and the ceiling raised.   They then told him that he might go ahead.   The secretary was the proper officer to grant the permission.   The policy required written consent.   This may be waived by the defendant, and the secretary of the home office was the defendant.   *Haight* v. *Insurance Co.*, 92 N. Y. 51.   Any negotiation or transaction after knowledge of forfeiture on the part of the company recognizes the validity of the policy, and the forfeiture is waived.   *Titus* v. *Insurance Co.*, 81 N. Y. 410.   The verdict of the jury, and the judgment thereon, must therefore be affirmed, with costs.

PRATT, J., concurred.

---

### In re LYDICKER'S ESTATE.

*(Supreme Court, General Term, Second Department.   June 25, 1888.)*

EXECUTORS AND ADMINISTRATORS—PROBATE PRACTICE—DISPUTED CLAIMS.

> A note given by a deceased person is not a disputed claim, where it appears that when it was presented against the deceased's estate no dissent was made by the administrator, who subsequently promised to pay it; that afterwards proceedings were instituted in the surrogate's court to enforce the claim, when the administrator alleged that the note was given by a married woman to pay her husband's debt; but, as the administrator again promised to pay the debt, the proceedings were dismissed.

Appeal from surrogate's court.

In the matter of a claim against the estate of Jennette Lydicker.

Argued before BARNARD, P. J., and PRATT, J.

BARNARD, P. J.  The only question presented by this appeal is whether the claim of John M. Blanvelt against the estate was a disputed claim or not. If it was a disputed claim, the surrogate had no authority to decree its payment. The proof is conflicting.  There is no doubt but the claim was presented on the 24th of March, 1886, and that no dissent to the claim was made by the administrator. The claim was upon a note made by the deceased. The administrator subsequently promised to pay the note. "He never disputed this claim at any of these conversations."  "He always promised to pay it." The administrator never filed any inventory of the estate.  In September, 1886, the creditor commenced proceedings to compel payment of his debt, in the surrogate's court, and was there met by the allegation that the claim was disputed; that the note was the note of a married woman given to pay her husband's debt.  The administrator promised to pay the claim after the proceedings were commenced.  He was the husband of deceased, and entitled to the entire estate.  The surrogate dismissed the proceedings, and after the end of 18 months the creditor claimed a final accounting.  The administrator avers that the note was given for a judgment against the deceased, and that he thought the judgment debtor had paid the judgment.  No proof of this payment was given or offered on the trial.  If the claim was really disputed, the administrator was not bound to give the proof; but as bearing upon the fact whether it was disputed or not, it would have been proper.  The surrogate had the right to determine the fact, and the evidence supports his finding that it was not a disputed one.  The first dissent was at the very end of the strict statute of limitations, on the assumption that the claim is in dispute. The administrator had a direct personal interest in the claim, and full knowledge of its basis, and should have plainly and at once objected to it.  After the claim has been passed by the administrator it becomes a liquidated and undisputed debt.  *Lambert* v. *Craft*, 98 N. Y. 342.  The judgment should be affirmed.